The State of Ohio, Appellee, *v.* Carter, Appellant.

(No. CA85-03-008 — Decided September 16, 1985.)

*James L. Flannery,* prosecuting attorney, for appellee.

*Fowler, Oswald & Rittgers* and *Charles H. Rittgers,* for appellant.

Koehler, P.J. Defendant-appellant, Jack Carter ("appellant"), was indicted by the Grand Jury of Warren County, Ohio, on February 8, 1985. He was charged with receiving stolen property with specification, R.C. 2913.51(A); possessing criminal tools with specification, R.C. 2923.24(A); and having weapons under disability with specification, R.C. 2923.13(A)(2). On March 6, 1985, the Court of Common Pleas of Warren County heard appellant's motion to suppress. By entries dated March 7 and 8, the court sustained the motion as to certain tape-recorded statements; the motion was denied, however, as to physical evidence. Additionally, the court determined that appellant's arrest was lawful. Appellant thereafter entered a plea of no contest to the above-indicated charges. Notice of appeal to this court from the trial court's final judgment of conviction was timely filed on March 12, 1985.

On appeal, appellant raises a single assignment of error:

"The trial court erred by denying appellant's motion to suppress the physical evidence where that evidence was obtained through illegal methods."

The testimony at the March 6 suppression hearing disclosed that appellant first came under investigation in this case when a confidential informant notified the police, on January 4, 1985, that he had been at a bar the previous evening and had overheard a conversation between appellant and co-defendant James Adams. According to the testimony of Detective James Malott, a police officer with the city of Middletown, the informant stated that during the conversation appellant and Adams revealed that they were planning an out-of-town burglary for the next day, January 4. Malott further testified that during the afternoon of January 4, appellant and Adams were seen leaving town by an off-duty police officer. Said officer had been involved in prior surveillances of appellant and Adams.

On the basis of this information, the police established surveillances at the residences of appellant and Adams. At approximately 11:50 p.m., the suspects arrived at Adams' Warren County apartment. As they were getting out of the automobile, they were taken into custody. The automobile, a yellow Toyota, was owned by Adams' wife.

Appellant and Adams were patted down and advised of their *Miranda* rights. No incriminating evidence was found on their persons. The search of the automobile's passenger compartment uncovered a road atlas and several items of clothing attributed to Adams. Appellant and Adams were then placed in the back seat of a police cruiser; unbeknownst to them a tape recorder had been placed on the front seat. As

noted above, the recorded statements were suppressed at the March 6 hearing. Thereafter, a warrant was obtained and the search of the automobile's trunk uncovered that incriminating physical evidence which appellant seeks to suppress by this appeal.

In support of his assignment of error, appellant contends that he and Adams were arrested without probable cause and, therefore, the evidence seized in the subsequent search should have been suppressed.

At first blush, the decision of the United State Supreme Court in *Rakas* v. *Illinois* (1978), 439 U.S. 128, seems to dispose of appellant's claim. Like the petitioners in *Rakas*, appellant had no possessory interest in Adams' vehicle; his status was nothing more than that of a passenger. In *Rakas*, the Supreme Court held that mere presence does not entitle one to challenge the search of a vehicle. That passengers are in a car with the permission of the owner is not determinative of whether they have a legitimate expectation of privacy.

The petitioners in *Rakas*, however, did not challenge the initial stop of the vehicle in which they rode, or their removal from it. Two concurring justices and four dissenters found this to be significant. Thus, the decision in *Rakas* presumably does not mean that a mere passenger automatically lacks standing to challenge the search of a vehicle, even if the search has come about by exploitation of an infringement of his personal Fourth Amendment rights. See *Lewis* v. *State* (Tex. Crim. App. 1984), 664 S.W.2d 345; *People* v. *Kunath* (1981), 99 Ill. App. 3d 201, 425 N.E.2d 486.

At fn. 1 of our recent decision in *State* v. *McClendon* (Jan. 14, 1985), Fayette App. No. CA84-06-006, unreported, this court stated:

"In *Rakas, supra,* the Supreme Court of the United States did not hold that those persons who are 'merely passengers' in a motor vehicle will never have standing to object to an unreasonable search or seizure. The petitioners in *Rakas* did not challenge the constitutionality of the police action in stopping the automobile in which they were riding. This would indicate that a 'mere passenger' does have standing to object to police conduct which intrudes upon his Fourth Amendment protection against unreasonable seizure of his person. '[Where the] stop is unconstitutional, evidence found as a fruit of the unconstitutional stop may be excluded from evidence.' *United States* v. *Williams* (5th Cir. 1979), 589 F.2d 210, 214, rehearing denied [*sic*] 600 F.2d 18, [affirmed] on rehearing 617 F.2d 1063; LaFave & Israel, *Criminal Procedure* (1984), 725-727, Section 9.1(d)."

Lack of standing thus does not preempt appellant's suppression argument on this appeal.

Appellant, however, loses his argument on the merits. An arrest without a warrant is permitted where there are reasonable grounds to believe that the person to be arrested has committed a felony. Thus, the question becomes one of whether there was probable cause for making the arrest. See *Henry* v. *United States* (1959), 361 U.S. 98. "The probable cause needed to make a warrantless arrest constitutionally valid requires that the arresting officer, at the moment of the arrest, have sufficient information, based on the facts and circumstances within his knowledge or derived from a reasonably trustworthy source, to warrant a prudent man in believing that an offense had been committed by the accused." *State* v. *Ingram* (1984), 20 Ohio App. 3d 55, 57. In our view, under the totality of the circumstances, the observations of the off-duty police officer coupled with the information provided to the police by the confidential informant, which information was based on the informant's personal knowledge, constituted sufficient information upon which a prudent individual could rely in believing that a

felony had been committed by appellant. See *Ingram, supra; State* v. *Stelts* (Dec. 17, 1984), Butler App. No. CA83-11-120, unreported.

In sum, it is our conclusion that the trial court did not err in denying appellant's motion to suppress the physical evidence.[1] Appellant's arrest was constitutionally valid in that sufficient probable cause was existent. Further, we need not address the additional issue of whether the search of Adams' automobile subsequent to the arrest was valid. Under *Rakas,* the search of the trunk of Adams' automobile did not implicate appellant's Fourth Amendment rights. The assignment of error is without merit and, accordingly, is overruled.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

HENDRICKSON and CASTLE, JJ., concur.

CASTLE, J., retired, of the Twelfth Appellate District, was assigned to active duty pursuant to Section 6(C), Article IV, Constitution.

---

[1] In his brief to this court, appellant seems to make the additional argument that the evidence seized from the trunk of Adams' automobile is tainted by the unlawful recording of his conversation with Adams. According to appellant, the unlawful recording resulted in the search of the trunk. Under the decision of the United States Supreme Court in *Wong Sun* v. *United States* (1963), 371 U.S. 471, evidence derived from illegal police conduct is inadmissible.

Appellant's argument in this regard is without merit. A fair reading of the record clearly indicates that the police would have made the search of the trunk regardless of the tape recording. Simply stated, under the *Wong Sun* standard, the recording was not even a "but for" cause of the subsequent search. The physical evidence to which appellant objects was not obtained by exploitation of an illegality. See *Lewis* v. *State, supra.*