JOURNAL ENTRY AND OPINION
The defendant, Sherman Thomas, appeals from the verdict in Case No. CR-392756, Cuyahoga County Court of Common Pleas, Criminal Division, in which he was found guilty of two counts of aggravated robbery, one count of felonious assault, and one count of possession of drugs. Further, the defendant was found guilty of one three-year gun specification. It is from the proceedings of the lower court which the defendant now appeals. For the following reasons, the defendant's appeal is not well taken.
The instant matter stems from two separate events which occurred on February 2, 2000 in the areas of East 124th Street and Miles Avenue and East 119th Street and Minor Avenue. The first incident occurred just after midnight on February 2, 2000. The victim, Mandrell Means, testified that he was walking along East 124th Street when a white Subaru with red tinted windows approached. Means testified that he was on the driver's side of the vehicle when the driver of the car, later determined to be Marious Sowell, exited the vehicle and demanded money from Means. Means testified that he noticed three other individuals in the vehicle. Sowell brandished a revolver in demanding the money, but Means quickly grabbed the barrel of the gun and a struggle ensued. The front passenger exited the Subaru during the struggle and fired at Means. Means testified that after the front passenger fired, Sowell and the others fled in the Subaru towards Miles Avenue. Thereafter, Means notified the police of what had happened and gave a detailed description of the perpetrators.
The second incident occurred on East 119th and Minor Avenue sometime after the first incident on February 2, 2000. The victim, Burnell Cole, testified that he was walking home when a white Subaru with red-tinted windows approached. The Subaru pulled into Cole's driveway, and the driver and front passenger exited the vehicle, each brandishing handguns. The individuals came up to the porch and ordered Cole to "get down." One of the perpetrators gave his gun to his cohort and proceeded to strip Cole of his clothes, pager, earring and other jewelry. Cole stated that one of the guns was an automatic. The two perpetrators retreated to the Subaru and began to drive away. As the Subaru pulled away, a police cruiser approached and followed the Subaru to Putnam Avenue.[1] The Subaru pulled into a drive-way, and the front passenger immediately exited the vehicle and attempted to flee. The passenger was apprehended; the others remained in the Subaru. The front passenger who attempted to flee was determined to be Sherman Thomas, the defendant. As the officers attempted to place Thomas in the police cruiser, Thomas dropped something. The police retrieved the item and it was later determined to be drugs.
In order to make an identification, the police requested Means, the first victim, to come to the station and identify the perpetrators.Means was able to make a positive identification of Sowell. A further search of the Subaru revealed the clothing belonging to Cole, the second victim, and two guns under the front passenger seat. One of the guns was a revolver, as described by Means, and the other was an automatic, later described by Cole. Further, the police discovered a spent automatic casing embedded in the snow on the trunk of the Subaru. Testing revealed the casing had been shot from the automatic that was found under the front passenger seat of the Subaru.
Thomas and the other passengers of the Subaru were arrested. Thomas was originally charged in the juvenile court with various offenses, and his case was then bound over to the common pleas court. There, Thomas was found guilty of the above stated offenses and now appeals that conviction.
Thomas presents eleven assignments of error for this Court's review.
The appellant's first assignment of error states:
 I. DEFENDANT WAS DENIED DUE PROCESS OF LAW WHEN HE WAS AUTOMATICALLY BOUND OVER TO THE COMMON PLEAS COURT WHEN NO DETERMINATION WAS MADE THAT THE DEFENDANT WAS A PRINCIPAL OFFENDER WITH RESPECT TO THE FIREARM SPECIFICATION.
The appellant argues that the juvenile court never made a determination in its judgment entry that he possessed a firearm at the mandatory bindover proceedings. The journal entry of the juvenile court states that the appellant was charged "with a category two offense and is alleged to have had a firearm on his person or under his control during the commission of the offense, and displayed, brandished, indicated possession of, or used the firearm to facilitate the commission of the offense."
The juvenile court has original jurisdiction over any person under eighteen years of age charged with committing an act that would be an offense had it been committed by an adult. R.C. 2151.23. Under R.C.2151.25, the juvenile court retains jurisdiction unless the court relinquishes jurisdiction pursuant to R.C. 2151.26. R.C. 2151.26(B) mandates that certain matters be transferred. Pertinent to this case is R.C. 2151.26(B)(4), which states:
 After a complaint has been filed alleging that a child is a delinquent child for committing an act that would be an offense if committed by an adult, the court at a hearing shall transfer the case for criminal prosecution to the appropriate court having jurisdiction of the offense if the child was fourteen years of age or older at the time of the act charged, if there is probable cause to believe that the child committed the act charged, and if one or more of the following applies to the child or the act charged:
* * *
 (4) The act charged is a category two offense, other than a violation of section 2905.01 of the Revised Code, the child was sixteen years of age or older at the time of the commission of the act charged, and either or both of the following apply to the child:
* * *
 (b) The child is alleged to have had a firearm on or about the child's person or under the child's control while committing the act charged and to have displayed the firearm, brandished the firearm, indicated possession of the firearm, or used the firearm to facilitate the commission of the act charged.
The Ohio Supreme Court, in State v. Hanning (2000), 89 Ohio St.3d 86, ruled as follows in paragraph one of the syllabus:
 The mandatory bindover provision of ORC 2151.26(B)(4)(b) does not apply unless the child, himself or herself, had a firearm on or about the child's person or under the child's control while committing the act charged and the child displayed the firearm, brandished the firearm, or used the firearm, indicated possession of the firearm, or used the firearm to facilitate the commission of the act charged.
In the case at bar, the complaint filed against the appellant contained allegations that would cause him to be subject to mandatory transfer pursuant to R.C. 2151.26(B)(4). In particular, the two-count complaint alleged that he was more than sixteen, but less than eighteen years of age when he committed aggravated robbery, R.C. 2911.01. Under R.C.2151.26(A)(2)(a), a violation of R.C. 2911.01 is a "category two" offense. The complaint also contained firearm specifications.
Before the juvenile court may relinquish its jurisdiction, the court must conduct a preliminary hearing. Juv.R. 30(A) provides, "in any proceeding where the court considers the transfer of a case for criminal prosecution, the court shall hold a preliminary hearing to determine if there is probable cause to believe that the child committed the act alleged and that the act would be an offense if committed by an adult." The hearing may be upon motion of the court, the prosecuting attorney, or the child.
Juv.R. 30(B) states, "in any proceeding in which transfer of a case for criminal prosecution is required by statute upon a finding of probable cause, the order of transfer shall be entered upon a finding of probable cause." In the case at hand, the juvenile court conducted the proper preliminary hearing and determined that probable cause existed to bind the appellant over to the court of common pleas. The appellant's guilt or innocence is not at issue during the bindover proceedings. The bindover hearing need not conform with all the requirements of a criminal trial. It must measure up to the essentials of due process and fair treatment; however, the defendant need not be afforded all the rights that he may have for trial. See. Kent v. United States (1996), 383 U.S. 541,16 L.Ed.2d 84. All that is determined at a bindover proceeding is the child's age at the time the crime was committed and whether there is probable cause to believe the juvenile committed the crime. R.C.2151.26(A)(1)(a) and (b). As such, the appellant's first assignment of error is not well taken as the juvenile court determined that probable cause existed to bind him over to the court of common pleas.
The appellant's second assignment of error states:
 II. DEFENDANT WAS DENIED DUE PROCESS OF LAW WHEN THE COURT RULED THAT DEFENDANT HAD NO STANDING TO CONTEST HIS SEARCH AND SEIZURE OF THE CAR.
The appellant argues that the trial court erred in ruling that he had no standing to contest the search of the Subaru. First, it should be noted that his counsel only moved to suppress the cocaine which had fallen from his hand. Specifically, the following exchange occurred at trial:
 Q. What evidence in particular do you think should be suppressed?
 A. I think, your Honor, the only evidence that related to this defendant is the allegation with respect to the bag that Officer Chmura testified at one point that he had seen fall from his hands and his final testimony that he did not know where it had come from. So we move to suppress that evidence with respect to Sherman Thomas.
As, his counsel did not raise the issue of the search of the car, the appellant should be precluded from raising the issue on appeal. Nevertheless, this court will address the issue on the merits.
The appellant argues that this assignment is controlled by State v.Goodlow (1992), 84 Ohio App.3d 529, in which this court determined that passengers in an automobile had standing to contest the subsequent search of the automobile. In Goodlow, this court determined that the initial police seizure of the vehicle was unreasonable and unconstitutional seizure of their persons which gave defendants standing to challenge subsequent searchs of the vehicle by police officers, even though defendants were merely passengers. Id. at 533.
Goodlow is easily distinguishable from the case at hand. In Goodlow,
the trial court determined that the initial seizure of their persons was unreasonable and unconstitutional, and they therefore had the requisite standing. In the instant matter, the appellant does not challenge the initial seizure. As such, he cannot now assert standing. Further, there is no evidence to indicate that the seizure was unreasonable or unconstitutional. The United States Supreme Court held, in Rakas v.Illinois (1978), 439 U.S. 128, that a defendant who asserted neither a property nor a possessory interest in an automobile searched, nor an interest in the property seized, was not entitled to challenge the search of these areas. As such, the appellant's second assignment of error is without merit and not well taken.
The appellant's third assignment of error states:
 III. DEFENDANT WAS DENIED DUE PROCESS OF LAW WHEN THE COURT FAILED TO SUPPRESS ANY IDENTIFICATION PROCEDURE.
The appellant contends that the identification of co-defendant, Marious Sowell, by the victim of the first robbery, Mandrell Means, should have been suppressed because the only instance of identification at trial was on direct examination of Officer John Prince. (Tr. 381-386). Officer Prince testified that the victim of the first robbery, Means, identified Sowell as the driver of the Subaru during the robbery. There was no objection to this testimony at trial, and further, appellant's counsel cross-examined the witness concerning the identification.
A failure to object at trial waives all but plain error. State v.Campbell (1994), 69 Ohio St.3d 38, 630 N.E.2d 339. Plain error occurs when "but for the error, the outcome of the trial clearly would have been otherwise." State v. Underwood (1983) 3 Ohio St.3d 12, 444 N.E.2d 1332;State v. Coleman (1999), 85 Ohio St.3d 129, 141, 707 N.E.2d 476.
As counsel for the defendant failed to object to the testimony, and moreover, cross-examined the witness as to the identification, the appellant's assignment is not well taken. Further, it is worth noting, the appellant was not contesting that he was present at the two robberies, rather his defense was that he did not participate in the two robberies. As such, it was necessary for Sowell to be identified as one of the gunman in order to pin the crime on Sowell. This was clearly a defense strategy which did not sway the jury in reaching their verdict as to the appellant's guilt. Further, even assuming arguendo that it was an error to admit the testimony, there is no evidence to indicate that the outcome of the trial would have been different as it is abundantly clear the appellant was the front passenger in the Subaru.
The appellant's fourth assignment of error states:
 IV. DEFENDANT WAS DENIED DUE PROCESS OF LAW WHEN THE COURT REFUSED TO SUPPRESS THE DRUGS.
Appellate counsel continues to operate under the notion that the appellant was taken out of the Subaru by the police; therefore, any evidence obtained was only as a result of this illegal activity. Obviously, appellate counsel's belief is misconstrued in that testimony at trial revealed the appellant jumped from the Subaru and attempted to flee from the police. There is no evidence to indicate that the appellant was illegally removed from the Subaru. On the contrary, testimony revealed that the appellant simply fled as the Subaru came to a stop. Testimony revealed that after being apprehended and cuffed, the appellant dropped something just prior to being placed in the police cruiser. The package which the appellant dropped was later determined to be 4.5 grams of crack cocaine.
Here is it clear that the appellant abandoned the property. As such, he cannot now attempt to assert a possessory interest in the property. A voluntary abandonment of property deprives a defendant of standing to challenge a subsequent seizure of said property. State v. Freeman
(1980), 64 Ohio St.2d 291, 297-298, 414 N.E.2d 1044. "Abandonment is primarily a question of intent, and intent may be inferred from words spoken, acts done, and other objective facts. United States v. Cowan
(C.A.2, 1968), 396 F.2d 83, 87. All relevant circumstances existing at the time of the alleged abandonment should be considered. United Statesv. Manning (C.A.5, 1971), 440 F.2d 1105, 1111. The issue is not abandonment in the strict property-right sense, but whether the person prejudiced by the search had voluntarily discarded, left behind, or otherwise relinquished his interest in the property in question so that he could no longer retain a reasonable expectation of privacy with regard to it at the time of the search. United States v. Edwards, supra,441 F.2d at 753; cf. Katz v. United States, 1967, 389 U.S. 347 * * *."
From the testimony and evidence adduced at trial, it is clear that the appellant abandoned the cocaine. After fleeing from the Subaru, he was apprehended by the police, handcuffed and arrested. As he was being placed in the police car, he decided to drop the cocaine to the ground in order to not be in possession of the drugs. The drugs in question constituted abandoned property and are not subject to any Fourth Amendment considerations. The appellant's fourth assignment of error is not well taken.
The appellant's fifth assignment of error states:
 V. DEFENDANT WAS DENIED DUE PROCESS OF LAW WHEN THERE WAS NO IDENTIFICATION BY A VICTIM BUT THE COURT ALLOWED IDENTIFICATION BY A POLICE OFFICER.
The appellant contends that the lower court erred in allowing two police officers to make statements concerning the fact that identifications were made. As with the appellee, this Court is confused as to what the appellant's argument is on this assignment of error. The appellant cites to Tr. 459, 460 and 490 in advancing this error.[2]
Tr. 459-460 refers to the testimony of Officer David Harris, one of the arresting officers. Officer Harris's testimony was in relation to the identification of photographs. Officer Harris identified photographs of those arrested on the night of February 2, 2000. There is no issue of hearsay or of pre-trial identification by a witness. Further, trial counsel for the appellant did not object to this line of questioning.See, Campbell supra. Tr. 490 refers to the testimony of Officer Harris, on cross-examination, concerning the location of co-defendant Marious Sowell in the Subaru. This testimony was given in response to a question posed by appellant's own attorney, thus the invited error doctrine is applicable. The "invited error doctrine" prohibits a party from raising an error on appeal which she herself invited or induced the trial court to make. State ex rel. Fowler v. Smith (1994), 68 Ohio St.3d 357, 359,626 N.E.2d 950; Center Ridge Ganley, Inc. v. Stinn (1987),31 Ohio St.3d 310, 313, 511 N.E.2d 106. Therefore, appellant is precluded from raising this issue on appeal. This testimony does not relate to any hearsay statement nor to pre-trial identification by a witness and, again, this question was asked by counsel for the defense. There was no error by the trial court or prejudice to the appellant. As such, the Appellant's fifth assignment of error is not well taken, let alone poorly constructed and argued.
The appellant's sixth assignment of error states:
 VI. DEFENDANT WAS DENIED DUE PROCESS OF LAW WHEN THE COURT PERMITTED EVIDENCE CONCERNING THE POLICE INVESTIGATION.
Once again, appellate counsel has failed to state what errors actually occurred in order to assert the above stated error. Appellate counsel parenthetically cites to Tr. 381-386 and Tr. 520 as the location of these alleged errors.[3]
Tr. 520 refers to the testimony of Officer Robert Goines. The only answer objected to by counsel on that page reads as follows:
 Q. Can you give us the circumstances which led to your assistance in that arrest?
 A. Approximately 1220 hours a.m., we received a radio broadcast of a male who was robbed. Radio gave a suspect description of a white Subaru, with a temp. tag with several males wearing all black.
Counsel: Objection.
The Court: Overruled.
Officer Goines's testimony merely related the circumstances which began the process which eventually led to the arrest of the appellant. The officer's testimony was clearly admissible and within the rules of evidence. Thus, the appellant's sixth assignment of error is without merit.
Having a common basis in both law and fact, the appellant's seventh, eighth and ninth assignments of error will be addressed together. They state:
 VII. DEFENDANT WAS DENIED DUE PROCESS OF LAW BY REASON OF THE VARIOUS PRESUMPTIONS GIVEN BY THE COURT WHICH ELIMINATED THE REQUIREMENT THAT GUILT BE PROVEN BEYOND A REASONABLE DOUBT.
 VIII. DEFENDANT WAS DENIED DUE PROCESS OF LAW WHEN THE COURT DILUTED THE REQUIREMENT OF PROVING A SPECIFIC CULPABLE MENTAL STATE.
 IX. DEFENDANT WAS DENIED DUE PROCESS OF LAW WHEN THE COURT GAVE ALTERNATIVE THEORIES TO THE PROSECUTION BUT DID NOT REQUIRE JURY UNANIMITY.
The appellant argues that various instructions given by the court denied the appellant due process of law. For the foregoing reasons, the appellant's assignments of error are without merit. The instructions of the lower court mimicked the applicable Ohio Revised Code sections, the applicable Ohio Jury Instructions, and the law of aiding and abetting as it stands today in Ohio. There is no evidence in the record which would lead this court to believe that the appellant was prejudiced in the matter. Therefore, the appellant's seventh, eighth, and ninth assignments of error are not well taken.
Appellant's tenth assignment of error states:
 X. DEFENDANT WAS DENIED DUE PROCESS OF LAW WHEN THE COURT OVERRULED HIS MOTION FOR JUDGMENT OF ACQUITTAL.
The appellant was convicted of two separate crimes at two different locations. The appellant argues that he was never identified as being the perpetrator at either location. In that he was never identified as the perpetrator of either crime, the lower court erred in overruling his motion for acquittal. The appellant's argument is without merit.
Crim.R. 29(A), which establishes the parameters for granting a motion for judgment of acquittal, provides in pertinent part:
 * * * The court on a motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of each offense or offenses. The court may not reserve ruling on a motion for judgment of acquittal made at the close of the state's case.
In addition, in State v. Bridgeman (1978), 55 Ohio St.2d 261,381 N.E.2d 184, the Supreme Court established that a trial court may not grant a Crim.R. 29(A) motion for acquittal where the evidence adduced at trial shows that reasonable minds can reach different conclusions as to whether the elements of a charged offense have been proven beyond a reasonable doubt. Pursuant to Crim.R. 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt.
In State v. Jenks (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, the Ohio Supreme Court re-examined the standard of review to be applied by an appellate court when reviewing a claim of insufficient evidence:
 An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia
(1979), 443 U.S. 307. 99 S.Ct. 2781, 61 L.Ed.2d 560, followed. State v. Jenks, supra, paragraph two of the syllabus.
More recently, in State v. Thompkins (1997), 78 Ohio St.3d 380, 386,678 N.E.2d 541, the Ohio Supreme Court stated the following with regard to the "sufficiency" as opposed to the "manifest weight" of the evidence:
 With respect to sufficiency of the evidence, "sufficiency is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law." Black's Law Dictionary (6 Ed. 1990) 1433. See, also, Crim.R. 29(A) (motion for judgment of acquittal can be granted by the trial court if the evidence is insufficient to sustain the conviction). In essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law. State v. Robinson
(1955), 162 Ohio St. 486, 55 Ohio Op. 388, 124 N.E.2d 148. In addition, a conviction based on legally insufficient evidence constitutes a denial of due process. Tibbs v. Florida (1982), 457 U.S. 31. 45, 102 S.Ct. 2211, 2220, 72 L.Ed.2d 652, 663, citing Jackson v. Virginia (1979), 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560.
A judgment will not be reversed upon insufficient or conflicting evidence if it is supported by competent, credible evidence which goes to all the essential elements of the case. Cohen v. Lamko (1984),10 Ohio St.3d 167, 462 N.E.2d 407. Where there is substantial evidence upon which the trier of fact has based its verdict, a reviewing court abuses its discretion in substituting its judgment for that of the jury as to the weight and sufficiency of the evidence. State v. Nicely
(1988), 39 Ohio St.3d 147, 529 N.E.2d 1236. The weight to be given the evidence and the credibility of the witnesses is primarily for the trier of fact to determine. State v. DeHass (1967), 10 Ohio St.2d 230,227 N.E.2d 212.
State v. Martin (1983), 20 Ohio App.3d 172, 485 N.E.2d 717, has set forth the proper test to be utilized when addressing the issue of manifest weight of the evidence. The Martin court stated:
 There being sufficient evidence to support the conviction as a matter of law, we next consider the claim that the judgment was against the manifest weight of the evidence. Here, the test is much broader. The court, reviewing the entire record, weighs the evidence and all the reasonable inferences, considers the credibility of the witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. * * * See Tibbs v. Florida (1982), 457 U.S. 31, 38, 42, 72 L.Ed.2d 652, 102 S.Ct. 2211.
Article IV, Section 3(B)(3) of the Ohio Constitution authorizes appellate courts to assess the weight of the evidence independently of the fact-finder. Thus, when a claim is assigned concerning the manifest weight of the evidence, an appellate court "has the authority and the duty to weigh the evidence and determine whether the findings of * * * the trier of fact were so against the weight of the evidence as to require a reversal and a remanding of the case for retrial." State exrel. Squire v. City of Cleveland (1984), 150 Ohio St. 303, 345,82 N.E.2d 709. The standard employed when reviewing a claim based upon the weight of the evidence is not the same standard used when considering a claim based upon the sufficiency of the evidence. The United States Supreme Court recognized these distinctions in Tibbs v. Florida (1982),457 U.S. 31, 72 L.Ed.2d 652, 102 S.Ct. 2211, where it determined that, unlike a reversal based upon insufficiency of the evidence, an appellate court's disagreement with the jurors' weighing of the evidence does not require special deference accorded verdicts of acquittal; i.e.,
invocation of the double jeopardy clause as a bar to re-litigation. Id. at 43.
Additionally, only a concurring majority of an appellate panel is needed to reverse a judgment based upon the sufficiency of the evidence as opposed to the unanimous concurrence of all three appellate judges necessary for a reversal based upon the manifest weight of the evidence.State v. Thompkins (1997), 78 Ohio St.3d 380, 386, 678 N.E.2d 541. An appellate court does not and cannot sit as the "thirteenth juror" when reviewing a claim based upon the weight of the evidence. Rather, we must accord due deference to the credibility determinations made by the trier of fact. See State v. DeHass, supra. As this court has previously stated in State v. Thompson (Apr. 23, 1998), Cuyahoga App. No. 72044, unreported:
 The fact-finder, being the jury (in the case) or the trial judge (in a waiver), occupies a superior position in determining credibility. The fact-finder can hear and see as well as observe the body language, evaluate voice inflections, observe hand gestures, perceive the interplay between the witnesses and the examiner, and watch the witness's reaction to exhibits and the like. Determining credibility from a sterile transcript is a herculean endeavor.
In the case herein, the victim of the first crime, Mandrell Means, testified that he was accosted by two men in a white Subaru. Means testified that the driver of the Subaru approached him and demanded money. The individual in the front passenger seat of the Subaru also exited the vehicle. A struggle ensued between Means and the driver of the Subaru, later identified as Marious Sowell, and the passenger fired his weapon at Means. Thereafter, the two perpetrators returned to the Subaru and sped away.
The second robbery occurred a short time later. Burnell Cole, the second victim, testified that the driver and front passenger of the Subaru approached him as he was on his porch. Each individual had a weapon. Cole testified that one of the individuals ordered him to the ground. After he was on the ground, one of the perpetrators handed his gun to the other as he stripped Cole of his clothing, money and jewelry. Cole testified that the two individuals fled to the Subaru, and almost immediately a police cruiser proceeded to follow the Subaru.
Testimony revealed that the police cruiser continued to follow the Subaru because it fit the description from the prior robbery. The Subaru continued to make frequent turns, eventually coming to a stop in a driveway on Putnam Avenue. At this point, the front passenger jumped from the Subaru and attempted to flee only to be apprehended. A later search of the Subaru recovered two guns under the front passenger seat of the car.
From testimony at trial, it is clear that the appellant was not only in the car during the robberies, but was the front passenger. The jury could have easily concluded that the appellant had exited the vehicle during both robberies, and testimony revealed that the front passenger brandished a gun during each robbery. Moreover, Cole, the second victim, testified that one of the perpetrators handed his weapon to the other in order to strip the victim. Thereafter, the jury could have concluded that the appellant returned to the front passenger seat of the vehicle and placed both of the guns under the front passenger seat. Upon being stopped, the appellant, who was sitting in the front passenger seat, attempted to flee only to be apprehended.
The appellant's argument that the lower court erred in overruling his motion for judgment of acquittal is meritless in light of the above stated facts. The weight to be given the evidence and the credibility of the witnesses are primarily matters for the trier of fact to determine, and it is not the function of the appellate court to substitute its judgment for that of the finder of fact. State v. Grant (1993),67 Ohio St.3d 465, 620 N.E.2d 50; State v. D'Ambrosio (1993),67 Ohio St.3d 185, 616 N.E.2d 909. Thus, this Court cannot now say that the underlying verdict is against the manifest weight of the evidence. It is apparent from the record that the fact-finder did not lose its way and create a manifest miscarriage of justice by finding the appellant guilty of the above stated offenses. The appellant's conviction was supported by substantial and credible evidence upon which the trier of fact could reasonably conclude that appellant was guilty of the indicted offenses.State v. Powell (1993), 87 Ohio App.3d 157, 168, 621 N.E.2d 1328; Statev. Sammons (Dec. 17, 1997), Summit App. No. 18209, unreported.
As such, the appellant's tenth assignment of error is not well taken.
The appellant's eleventh and final assignment of error states:
 XI. DEFENDANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL.
Lastly, the appellant argues that he was denied effective assistance of counsel citing trial counsel's failure to object or request proper jury instructions. As previously stated in combined assignments of error seven, eight, and nine, the jury instructions were proper and the lower court did not err. Further, appellant concedes in the previous assignment of error that trial counsel did object to portions of the instruction. As such, the appellant's final assignment of error is not well taken.
Judgment affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
ANN DYKE, P.J., AND JAMES J. SWEENEY, J., CONCUR.
[1] Testimony revealed that police were on patrol looking for a car matching the Subaru's description, as this vehicle was involved in the earlier robbery of Means.
[2] In addition to Tr. 459-460 and Tr. 490, the appellant objects to the testimony at Tr. 381-386, the testimony of Officer John Prince, which was discussed at length in the above third assignment of error. As such, it will not be discussed in this assignment of error.
[3] Tr. 381-386 will not be discussed as it was previously discussed in defendant's third assignment of error.