CITY OF LONDON, Appellant,

v.

EDLEY, Appellee.

[Cite as *London v. Edley* (1991), 75 Ohio App.3d 30.]

Court of Appeals of Ohio,
Madison County.

No. CA90–12–027.

Decided July 22, 1991.

*Alice L. Robinson*, City Law Director, for appellant.

*Espy & Benton* and *Frederick D. Benton, Jr.*, for appellee.

WALSH, Judge.

At approximately 11:15 p.m. on September 19, 1990, London City Police Sergeant Jerry Mikielewicz observed defendant-appellee, Antjuan Edley, alone in a parked car outside a bar making furtive gestures. After noticing appellee put a hand-rolled cigarette to his lips and lick it, Mikielwicz suspected the use of marijuana and moved towards the car. Peering into the vehicle, he caught a brief glimpse of a "baggie."

Upon returning to his cruiser to radio for assistance, Mikielwicz saw appellee's car drive away. With the help of another police officer appellee's car was stopped and searched by Mikielwicz. The search revealed a package of rolling papers, a baggie containing marijuana and a hand-rolled marijuana cigarette. Appellee was subsequently charged with one count of drug abuse, a minor misdemeanor.

On November 19, 1990, appellee filed a motion to suppress averring that the police lacked probable cause to search his car. The court heard the motion during appellee's November 20, 1990 trial and agreed to suppress the evidence for lack of articulable and reasonable suspicion. Following the close of the city's case, appellee made a Crim.R. 29 motion to dismiss, which the court granted.

After this court granted the city leave to appeal, the city timely filed the instant appeal and argues in its sole assignment of error that the lower court committed reversible error in dismissing the charges against appellee.

In *Terry v. Ohio* (1968), 392 U.S. 1, 19–20, 88 S.Ct. 1868, 1879, 20 L.Ed.2d 889, 905, the United States Supreme Court discussed a police officer's ability to stop and investigate unusual behavior in the absence of a warrant and wrote: " * * * In determining whether the search and seizure were 'unreasonable' our inquiry is a dual one—whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place."

Regarding the initial inquiry of the investigatory stop, the *Terry* court noted that to justify such an intrusion: " * * * the police officer must be able to point to specific and articulable facts, which taken together with rational inferences from those facts, reasonably warrant that intrusion." *Id.* at 21, 88 S.Ct. at 1880, 20 L.Ed.2d at 906. In making this assessment, the court stated that the facts of the case must be measured against an objective standard: "[W]ould the facts available to the officer at the moment of the seizure or the search 'warrant a man of reasonable caution in the belief' that the action taken was appropriate?" *Id.* at 21–22, 88 S.Ct. at 1880, 20 L.Ed.2d at 906.

■ Given the elusive nature of the terms articulated by the court in *Terry*, a "search and seizure" type analysis should not be conducted in a vacuum. *State v. Andrews* (1991), 57 Ohio St.3d 86, 565 N.E.2d 1271. Rather, the propriety of an investigatory stop by a police officer must be viewed in light of the totality of the circumstances. *State v. Freeman* (1980), 64 Ohio St.2d 291, 18 O.O.3d 472, 414 N.E.2d 1044, paragraph one of the syllabus. Thus, to determine the validity of Mikielewicz's investigatory stop, we must necessarily examine the events which prompted him to stop appellee's vehicle that evening.

■ The city points to the following summarized factors in asserting that Mikielewicz had reasonable and articulable suspicion to stop appellee: (1) appellee was in his car alone at a late hour with his dome light on; (2) his car was parked at the rear of the lot in a high crime rate area; (3) appellee seemed preoccupied with and made arm movements toward his lap; (4) appellee looked around on three or four occasions; (5) Mikielewicz observed appellee lick a hand-rolled cigarette; (6) he also observed a "baggie" containing material; and, (7) the sergeant had extensive training and experience in drug enforcement.

Based on the totality of these circumstances, we find that Mikielewicz lacked reasonable suspicion that appellee was engaged in criminal activity. It has been held that, a mere furtive gesture, standing alone, does not create probable cause to stop and search a vehicle without a warrant. *State v. Bobo* (1988), 37 Ohio St.3d 177, 179, 524 N.E.2d 489, 492; *State v. Jackson* (1989), 52 Ohio App.3d 39, 39, 556 N.E.2d 223, 224. In *Jackson,* a police officer likewise

observed the defendant sitting alone in a parked automobile in a high crime rate area making furtive gestures. After he noticed the defendant lean over, the officer asked him to leave the car. A subsequent search of the vehicle revealed a packet of cocaine under the front seat. In affirming the trial court's decision to suppress the evidence, the court determined that the lower court could reasonably conclude "that the officer relied on nothing more than the [defendant's] furtive movement to justify the search." *Id.* at 39, 556 N.E.2d at 224.

Upon reviewing the sergeant's testimony in the instant case, it is evident he relied to a large extent on appellee's "suspicious" gestures to justify the stop. During cross-examination, Mikielewicz described in detail how appellee's mannerisms, coupled with the fact that the car's dome light was on, initially attracted his attention.

While reliance on such clandestine gestures is permissible when other facts indicating reasonable suspicion are present, the remaining evidence in this case, namely a baggie in the car and the licking of a hand-rolled cigarette, fails to create that reasonable suspicion. At the hearing, Mikielewicz testified that he was unsure of the contents in both the baggie and the cigarette prior to stopping appellee's car, although he suspected marijuana. While the sergeant's suspicions proved correct, the end result of a search is not the standard by which the validity of its preceding stop is measured. Instead, we must necessarily look at the particular circumstances which lead to the particular stop. In this case, the sergeant could have been observing appellee roll his own cigarette with tobacco from the baggie rather than marijuana. The fact that Mikielewicz's subsequent search disproved this scenario, however, does not justify the sergeant's initial intrusion.

Viewed in this context, the factors the city used to justify the stop, specifically appellee's furtive gestures and the sergeant's viewing of both a baggie and a hand-rolled cigarette containing an unknown substance, are not sufficient to establish reasonable suspicion that appellee was engaged in criminal activity. Accordingly, the city's sole assignment of error is overruled.

*Judgment affirmed.*

JONES, P.J., and KOEHLER, J., concur.